## H. G. HENDERSON v. RAILROAD COMPANY.

The individual members of an incorporated Company are deemed strangers to the artificial body created by the Act of incorporation, and may maintain their rights of action, of whatever nature, against the Company, in the same manner as those who are not members.

The representations, declarations, and admissions of the agent of a corporation, stand upon the same footing with those of the agent of an individual.

As natural persons are liable for wrongful acts and neglects of their servants and agents, done in the course and within the scope of their employment, so are corporations, upon the same grounds, in the same manner, and to the same extent.

And nothing is better settled, than that the fraud of an authorised agent will invalidate a contract, entered into by him, on behalf of his principal, although in perpetrating the fraud, the agent acted without the knowledge or consent of the principal.

And even though the agent has transcended his authority in making the contract, yet if the principal ratify it and make the contract his own by availing himself of the benefits of it, he is liable in like manner as if he had personally made the contract; for he cannot ratify the contract, and avoid the responsibility of the representations which formed its basis, but he must ratify the contract *in toto*. [In this case there was no question whether the liability of the principal extended beyond the nullification of the contract.]

If a material misrepresentation be made, although it be not embodied in the contract, it is considered a constructive, or legal fraud, although it be made without any wilful intention to deceive, but merely through carelessness, mistake or ignorance ; for if a party be actually deceived by a misrepresentation, the practical result is the same, whether it were a wilful fraud or not.

If the construction of the road within some certain and reasonable time was the essential inducement to the making of the contract (to donate lands to the Company, or subscribe for stock therein,) if that was the real intention of the contract, and the obligation which it imposed on the defendant (the Company,) the extension of time (for the building of the road) by the Legislature, could not have the effect to discharge the defendant from that obligation.

The law does not recognise any such distinction as that the ordinary rules governing the contracts of individuals, do not equally apply to the case of incorporated companies, regardless of the amount of public interest that may be supposed to be involved in the success of such companies.

The cost of the construction of a given railroad and the time within which it will be completed to a given point, are not matters about which every one is

presumed to be equally capable of judging, in such sense as would relieve the contract of the Company, through its agents, from the ordinary effects of misrepresentations as to those particulars, where they are the essential inducements to the contract.

Where representations in relation to things in the future we alleged to have been false and fraudulently made, and it was objected that representations in relation to things in the future could not be deemed fraudulent, the Court said it was not necessary in order to render the representations and assurances of a partyon which others have acted, binding upon him, that they should have had relation to facts which had previously transpired.

Appeal from Guadalupe.    Tried below before the Hon. Thomas H. DuVal.

This was a suit, commenced Oct. 21st, 1854, by H. G. Henderson, appellant, against the San Antonio and Mexican Gulf Railroad Company, appellees, to cancel two deeds, executed by the appellant to Enoch Jones, in trust for the appellee, and also to cancel two deeds executed by Jones to the appellee by virtue of said deeds of trust.   One of the deeds from the appellant to Jones, for 140 acres of land, was dated September 4th, 1852 and contained the following condition :

" When the said San Antonio and Mexican Gulf Railroad " Company shall be fully organized, and shall have put under " contract twenty miles of said railroad, and located said road " so as to cross the Cibolo creek above the Sulphur Springs to " San Antonio, then the said Enoch Jones is hereby fully au- " thorised to convey to the President and Directors of the said " Railroad Company, in my name, a full and complete fee-sim- " ple title to the said land herein described, but without gua- " ranty of title, except as to those claiming by, through or un- " der me, or my heirs or assigns ;  the land herein conveyed " being a donation to said Company in the construction of a " railroad," &c.

The other deed from appellant to Jones, for five hundred acres of land, was dated Sept. 4, 1852, and contained the following condition :

Vol. XVII.                    36

" When the said Railroad Company shall be fully organ-
' ized, and the president and directors shall issue in my favor a
" certificate for four shares of the capital stock of said Compa-
" ny, said stock entitling me to all the advantages, privileges,
" and dividends of other stockholders who may subscribe
" in money, then the said Enoch Jones is hereby fully author-
" ized and empowered to convey to the president and directors
" of the said Railroad Company and their successors in office,
" for the use of the Company, by absolute fee-simple title, with
" full stipulations of warranty, the land hereinbefore de-
" scribed," &c.

Both of these deeds provided that, in case of the death or
removal of Jones, Thomas J. Devine should be trustee to convey
out the intention of the deed.

On the 9th of June, 1853, Jones conveyed the land described
in the deeds to the defendant.

The petition alleged " that, on the 5th day of September,
" 1850, Enoch Jones, Thomas J. Devine, citizens of Bexar
" county, together with others, obtained a charter from the Le-
" gislature of the State of Texas, in which they were appoint-
" ed a committee to form and organize a company, to be enti-
" tled the San Antonio and Mexican Gulf Railroad Company ;
" that the said Enoch Jones and Thomas J. Devine, on the
" 7th day of October, 1851, were elected, the one president,
" and the other a director of said Company, and had one P.
" W. Platt constituted and appointed an agent to solicit
" donations to said Company and obtain subscriptions for
" stock ; that the said Platt on the 4th day of September,
" 1852, as agent of said Company as aforesaid, repre-
" sented to your petitioner that the construction of said
" railway would result in very great immediate advantage and
" profit to your petitioner, from the increase of immigration to
" this State, and the consequent rise of lands, besides the in-
" creased facilities for transportation ; and said Platt further
" represented that said railway had at that time already been

" commenced in accordance with one of the provisions of the " said charter, to-wit: that said railway should be commenced " within one year from the 1st day of November, 1850, other- " wise the charter should be null and void ;" that said Platt further represented that twenty miles of said railway would be completed within three years from its commencement. Your petitioner alleges and expressly charges that said representations, made by the said Platt, as agent aforesaid, were false and were made with a view to deceive and defraud your petitioner ; that they were made by the said Platt with the full knowledge and authorization of said Company, and that the said Company authorized the said Platt, as agent aforesaid, to make said false and fraudulent representations with a view to defraud your petitioner.

Your petitioner further alleges and expressly charges that the above representations by the said Platt, that said railway had at that time already been commenced in accordance with the provisions of the charter, and that twenty miles would be completed within three years from its commencement, were false and fraudulent and that since said false representations were made by the said Platt, this petitioner has discovered, and expressly charges, that said Company never did make a *bona fide* commencement of said road in accordance with the provisions of said charter, but that said Company, with a view to deceive, and in fraud of the provisions of said charter, made a few marks with a plow and cut a few bushes near Mission Conception in the neighborhood of the city of San Antonio on the 31st day of October, 1851, the very last day allowed by the charter for the commencement of said road ; that the whole amount of labor performed in making said marks and cutting said bushes did not amount to the labor of three men for one day ; that at the time said work was performed, said road was not located, and the said work was not done upon the line of said road, as subsequently adopted by said Company, nor has any work been since done at said place, or any-

where upon the line adopted subsequently ; that the represent-
ations of said Platt, that twenty miles of said road would be
completed, within the time specified in said charter, was like-
wise false and fraudulent, and made also with a view to de-
ceive ; and your petitioner expressly charges that the said
Platt and the said Company knew at the time that there was
no reasonable prospect of the completion of the said twenty
miles within the three years. But your petitioner, having
faith and confidence in the truth of said false and fraudulent
representations, did, at the request of said Platt as agent afore-
said make, execute and deliver (the deed for one hundred and
forty acres, describing it, and making exhibit of a copy there-
of.)

Your petitioner further represents that said Enoch Jones,
in fraud of your petitioner's right, conveyed said land to the
said Company without your petitioner's knowledge and con-
sent and without the conditions, contained in said deed of
trust, having been complied with on the part of said Company,
a copy of which conveyance is hereto annexed.

Your petitioner further represents, in addition to what he
has already alleged, that the said P. W. Platt, acting as
agent as aforesaid, on the 4th day of September, 1852, and
at the same time he procured the deed of trust from your pe-
titioner, with the same authority, knowledge and consent of said
Company, falsely represented, in addition to said fraudulent re-
presentations as to the commencement of said road, and the
completion of twenty miles of the same, that said railway would
not cost above twelve thousand dollars per mile, and that the
taking of stock in said Company would be a profitable invest-
ment in consequence of the cheapness of the construction of
said railway, and the large income that the Company would
realize from the same ; that one J. E. Johnson, an engineer,
was then engaged in surveying a route for said railway, and,
from all the Company could learn from him and from other
sources, that said railway would not exceed in cost the amount

mentioned above ; and your petitioner charges that said false and fraudulent representations were made by the said Platt with a view to deceive and defraud your petitioner, and with the full knowledge, consent and authority of said Company, and that your petitioner having faith and confidence in the said false representations of said Platt, at his request made, executed and delivered to the said Jones and Devine a deed (the deed for 500 acres above described.)

Your petitioner further represents, that, on or about the 2nd day of February, 1853, the said Jones, acting as president of said Company, advertised that sealed proposals would be received until the first day of April next for the construction of sixty (60) miles of the San Antonio and Mexican Gulf rail road, extending from Lavaca bay to the crossing of the Guadalupe river in the vicinity of the town of Clinton ; that on or about the 12th day of April, 1853, said Enoch Jones, still acting as president of said Company, and the said Thomas J. Devine, still acting as director, procured the contract for the construction of said railway from Lavaca bay to the city of San Antonio, the entire distance of the contemplated railway, at twenty-seven thousand dollars per mile, thus by advertising that the construction of a part only of said railway would be contracted for, when the whole was intended, the Company diverted competition, thereby greatly diminishing if not absolutely destroying the value of the stock of said Company.

Your petitioner further represents that he has never been officially informed of the organization, or has received a certificate of the five shares of stock stipulated for in said deed of trust, or been informed that the same was ready for him, yet the said Enoch Jones, in fraud of your petitioner's rights, and without his knowledge and consent, has conveyed said land in fee simple to said Company, without said Company having complied with any of the provisions and conditions of said deed of trust.

Your petitioner further represents that he was induced to

make the donation to said Company and take stock therein through the false and fraudulent representations of said Platt as agent for said Company, &c.

The defendants filed a general denial.

At the trial, the plaintiff after proving the deeds as hereinbefore stated, read in evidence the 18th Section of the charter of said Company, as follows : " That if said railroad is not " commenced within one year from the 1st November, 1850, " and at least twenty miles are not in running order within " three years from its commencement, then this charter shall " be null and void."

Then plaintiff read a contract between the said Company and Jones and T. J. Devine for the construction of said railway from the Gulf terminus to the city of San Antonio, for twenty-seven thousand dollars per mile, made and entered into on the 11th day of April, 1853.

J. H. Beck, a witness for plaintiff, testified that he was employed by the Company to grade and grub one mile ; that he commenced work on the day before that on which the charter would have been forfeited, had no work been done ; that he grubbed about half a mile for which he received about thirty dollars ; that the object of the work was to secure the charter ; that he stopped work at the request of the president of the Company, who offered him another mile of equal labor on another route ; that he undertook the work in good faith.

M. L. Merrick, for plaintiff, testified that there was a small amount of cutting brush and, perhaps, some grubbing and one or two furrows ploughed upon the ground where the Company commenced work ; that the work done might have cost ten dollars ; that it was done a short distance from San Antonio in 1851 or 1852, near the limit of the charter, when a demonstration had to be made.

P. W. Platt, for plaintiff, testified that his agency for the railroad Company began about the 4th of March, 1852, and continued about one year ; that, on examination of the copies

of the deeds annexed to the petition, he believed that he had procured like deeds from plaintiff; that he represented to the plaintiff that the country would be greatly benefitted by the construction of the road; that his lands would be doubled in value; that facilities would be furnished for trade; that he made money by giving the land to the Company, by the increased value of his other lands; that he thought he told him it would be commenced on the 1st of January, 1853, and continue to the crossing of the Guadalupe above Clinton in one year, and to the Cibolo in two or two and a half years; that it would cost $10,000 per mile. He further testified that he had obtained the information, upon which these representations were based from Jones, the president of the Company, and Johnson, the chief engineer; that he represented that the road had been commenced in accordance with the charter, which information he derived from the president; that a contract had been let to Beck, who had done work on it; that he made the statement as a fact on the knowledge which had thus been obtained; that his representations as to the time of completing the road were made upon the authority of the president.

It was admitted that the deeds referred to by this witness were the same as those appended to plaintiff's petition. It was admitted that no part of the road had been constructed; that the contract between Jones and Devine and the Company had been rescinded in 1854, and a contract made with Osgood, in April, 1856, for the construction of the road from Lavaca and Powderhorn to Victoria for nineteen thousand nine hundred and eleven dollars per mile, which was the least the road could be constructed for; that the certificates of stock, mentioned in the deeds, had been ready for plaintiff since the execution of the deeds from Jones to the Company; but that plaintiff had never called for or received them.

Andrew Neill, for plaintiff, testified that he knew the land in controversy, that it was then worth $4 per acre, and that

the cause of its rise from eighty cents, the amount allowed for it by the agent of the Company, to $4, was owing to the increase of immigration and the gradual improvement of the country.

The defendants proved several legislative extensions of the charter, the organization of the Company and election of officers immediately after the grant of the original charter, the sending of an agent North to negotiate means ; a survey by Col. Johnson, U. S. A., with a corps of surveyors, before the expiration of the time in the original charter, for which thirty three thousand dollars were paid ; that the means were raised partly from subscriptions, and partly from $30,000 subscribed by the city of San Antonio and Bexar county, in bonds ; that Jones and Devine had a portion of the necessary ties cut and prepared ; that the Osgood contract was secured by the Bexar and city bonds, the stock subscriptions and land donations.

It was agreed that the land donation by the State was considered in evidence, and that said lands were not hypothecated.

It was proved that Johnson's estimate was that a road, without grading, for the first thirty miles, might be built for $14,000 per mile, but it would have no ballast and only fifty-two pounds of iron per yard ; but a first-class road, with seventy pounds of iron to the yard would cost $27,000 per mile. The first estimate was made after Johnson had been over most of the ground, but before any surveys had been returned : the surveys were returned about the time of the making of the Jones and Devine contract. The coast and part of the route had been surveyed previous to plaintiff's subscription, but no official report was made until afterwards.

The Court, without request, after stating to the jury the issues joined, instructed the jury as follows :

The question of fraud, or of a fraudulent intent is a question of fact for the jury, which they must determine from the evidence.

Henderson v. Railroad Company.

To justify the jury in finding a verdict for the plaintiff in this case, on the ground of fraud practised by the defendant or its agents, they must be satisfied from the evidence, that the plaintiff was induced by false representations made to him by said Company or by its agent, with their knowledge and authority, to execute the deeds in question, and that these representations were not only false, but that they were made with the intent to deceive and defraud the plaintiff.

If any such false representations were made, which induced the plaintiff to make the deeds referred to, it is for the jury to determine by their verdict, whether they were made with the intent to defraud, or whether they were made *bona fide* (in good faith) but under a mistaken idea as to what the Company or its agent supposed and stated would be the future result as connected with the proposed railroad.

The jury must look to all the facts and circumstances as disclosed by the evidence and return their verdict accordingly.

At the request of defendant, the Court gave the following instructions :

That the time limited in the charter for beginning and completing the railroad having been extended by the Legislature, the time limited in the original charter for the beginning and completion of the road were not of the essence of the contract; and the failure to complete the road or any part of it within the time does not discharge the party from his contract.

That if they believed from the evidence that the plaintiff had equal opportunity of knowledge, the advantages, facilities and means of knowing the character of enterprise in which he was embarking, the low estimates of time and cost by the agents of the Company are not such circumstances as would relieve him from his donation and stock subscription.

That the defendants by their charter had the right to receive land donations and land stock subscriptions, and those donating or subscribing were bound to use due diligence as to

the advantages and disadvantages to themselves and the public, and if they deceived themselves, or were deceived by the mere mistaken notions of others, the subscribers could not therefore be relieved from their contracts.

That if the jury believe from the evidence that the statements made by Platt were the mere arguments of a sanguine man, about which the plaintiff was bound to exercise his own judgment, and about which both might alike have been deceived, then such statements do not amount to a fraud but only an extravagant opinion about a public enterprise.

The Court refused to give the following instruction asked by plaintiff :

That if the plaintiff was deceived by the representations of Platt, it operated as a fraud upon plaintiff, whether Platt knew the representations to be false or not.

Verdict and judgment for defendant ; motion for new trial overruled ; and appeal by plaintiff.

*W. B. Leigh,* for appellant.

*I. A. & G. W. Paschal,* for appellee. The statement of facts shows that the charter has been extended from time to time, and the privileges had never expired ; and that at the trial, the road was in progress of construction ; that the failures had been owing to uncontrollable circumstances ; and there was no proof that the agent who merely hazarded opinions as to the rapidity with which the road would progress, had any authority to do so. Nor is there proof that a single false or untrue statement was made to induce Henderson to subscribe for stock. There was proof of the appreciation of the value of the land ; but no proof of any positive wrong

The issues of fraud went to the jury under proper instructions from the Court. They found for the defendant.

The only question really presented, is, can a subscriber for

railroad stock, who thus becomes one of the corporators, as soon as he gets tired, sue the Corporation, and recover back his money, or land, for the stock, simply because he is tired ? If so, every man persuaded into an adventure might have an action against his partners for the fraud. Facts relate to things present, or things existing at the time of speaking.

The instructions of the District Judge upon this point were perfectly correct.

The Court would not have been allowed to suppose a case within the law governing individual transactions, and then to give instructions to suit the supposed case.

The fact is, one stockholder can have no such action against a corporation to rescind his contract, upon any such grounds. The public have an interest in these enterprises, which rises above the individual rights of a single stockholder. If the action is for the mis-user or non-user of the charter, and is by a stockholder, it should be a suit to rate the expenses and wind up the business of the concern. Then all the stockholders and creditors could be heard ; and if the appellant had suffered any peculiar hardship, he could be heard. But a form of action in which he seeks to take back all that he subscribed, because he has been disappointed would if tolerated be injurious to the public.

The charges of the Court were altogether too favorable to the plaintiff.

We here cite a few general references :

As to the power of the agents of corporations. (Angell & Ames, Sec. 298 et seq.)

And that the plaintiff could not take advantage of the nonperformance of the conditions, or of the forfeiture, or of the extension of the charter without his consent. (Angell & Ames on Corporations, Art. 777 et seq.; and the numerous notes, which are better than any brief.)

And that the plaintiff being a stockholder has no action against the Company, but only against the managers or offi-

cers. He is not a creditor or partner. (Angell & Ames, Sec. 312 and cases there cited.)

WHEELER, J. The argument for the appellee questions the right of the plaintiff to maintain the action. He is a stockholder, it is said, and as such cannot sue the Company in a suit of this character. If the position were correct, it would result in the affirmance of the judgment, whatever errors may have been committed upon the trial. But the law is otherwise. A private corporation may be sued by one of its own members. This principle is established by numerous decisions, both in the English and American Courts. (5 Adol. and Ell. R. 866; 3 B. and Adol. R. 125; 2 Bay, 109; 3 Met, 44; 4 H. and Johns. 338.) In this respect, the cases of incorporated companies are entirely dissimilar to those of ordinary copartnerships, or unincorporated joint stock companies. In incorporated companies, the individual members are entirely distinct from the artificial body endowed with corporate powers. (Angell and Ames on Corp. Sec. 390.) A member of a corporation, who is a creditor, has the same right of action as any other creditor, and may even attach the property of the company, though he may be personally liable by statute to satisfy other judgments against it. (3 Metc. 44.) The individual members of the corporation are deemed strangers to the artificial body created by the Act of incorporation, and may maintain their rights of action against the company, of whatever nature, in the same manner as those who are not members. The fact, that, by his contract the plaintiff was entitled to become, or was, in fact, a stockholder or member, did not deprive him of his right of action against the company. On general principles, it would seem not to admit of question, that one who, by false and fraudulent representations and inducements held out to him by the company, had been deceived and misled into the making an injurious contract, by which he became a stockholder

and member of the company, might maintain an action against it, to rescind the contract and dissolve the connection. To deny the right would be subversive of justice.

The plaintiff having the right to maintain the action, it becomes material to inquire whether there be error in the judgment, which has been rendered against him. The ground of error, mainly relied on, is the charge of the Court, as follows :

" To justify the jury in finding a verdict for the plaintiff on the " ground of fraud practised by the defendant or its agents, " they must be satisfied from the evidence, that the plaintiff was " induced by false representations made to him by said com- " pany, or by its agent with their knowledge and authority, to " execute the deeds in question ; and that these representa- " tions were not only false, but that they were made with in- " tent to deceive and defraud the plaintiff."

The charge maintains that to render the Company responsible for the frauds practised by their agents, the false representations must have been made, 1st, with the knowledge and authority of the Company ; and 2nd, with the intent to deceive and defraud the plaintiff. That both propositions are erroneous will be apparent by a brief reference to authorities.

Story, in his Treatise on Agency, thus states the law, upon the subject of the liability of the principal for the misfeasances, negligences and torts of his agents, as deduced from the adjudged cases. " It is a general doctrine of law, that, although " the principal is not ordinarily liable (for he sometimes is) in " a criminal suit, for the acts or misdeeds of his agent, unless, " indeed, he has authorized, or co-operated in those acts or mis- " deeds ; yet he is held liable to third persons in a civil suit " for the frauds, deceits, concealments, misrepresentations, torts, " negligences, and other malfeasances, or misfeasances, and " omissions of duty of his agents, in the course of his employ- " ment, although the principal did not authorize, or justify, or " participate in, or, indeed, know of such misconduct, or even " forbade the acts, or disapproved of them. In all such cases

" the rule applies, *respondeat superior ;* and it is founded upon
"public policy and convenience ; for in no other way could
"there be any safety to third persons in their dealing, either
" directly with the principal, or indirectly with him through
" the instrumentality of agents. In every such case, the prin-
" cipal holds out his agent, as competent and fit to be trusted ;
" and thereby, in effect, he warrants his fidelity and good
" conduct in all matters within the scope of his agency." (Sto-
ry on Agency, Sec. 452, 127, 135, 137.)

The same doctrine applies in respect to the liability of incor-
porated companies for the acts of their agents. Unless the
act of incorporation expressly prescribe the contrary, the duly
authorized agents of corporations, as of natural persons, may,
within the scope of their authority, not only bind them by
their contracts ; but from their acts and conduct, as from the
acts or conduct of the agents of natural persons, implications
may be made, either for or against their constituents. And if a
corporation ratifies the unauthorized act of its agent, the rat-
ification is equal to a previous authority, as in case of natural
persons. The representations, declarations, and admissions of
the agent of a corporation, stand upon the same footing with
those of the agent of an individual. As natural persons are
liable for wrongful acts, and neglects of their servants and
agents, done in the course and within the scope of their em-
ployment, so are corporations, upon the same grounds, in the
same manner, and to the same extent. " Indeed, (it is said in
" a learned treatise on corporations,) whether we consider their
" mode of appointment or of action, their powers, rights and
" liabilities, or the liabilities and rights of their constituents,
" by virtue of their acts, or contracts, we can perceive no differ-
" ence in principle or precedent, between the agents of corpor-
" ations, and those of natural persons, unless expressly made
" by the Act of incorporation or by laws." (Angell and Ames
on Corporations, Sec. 315, 292, 304, 309, 310, 311.) The de-
fendants, therefore, are to be held responsible for the acts and

representations of their agent in the same manner as an individual would be.

And nothing is better settled, than that the fraud of an authorized agent will invalidate a contract, entered into by him on behalf of his principal, though in perpetrating the fraud, the agent acted without the knowledge or consent of the principal. (4 Term R. 39 ; 1 Id. 12 ; 1 Stark. R. 434: 6 Mees. and Wels. 358.) And even though the agent has transcended his authority in making the contract, yet if the principal ratify it, and make the contract his own by availing himself of the benefit of it, he is liable in like manner as if he had personally made the contract. And if the agent has made misrepresentations, the principle is bound by them ; for he cannot ratify the contract, and avoid the responsibility of the representations, &c., which formed its basis ; but he must avoid or ratify the contract *in toto* . (Story on Con. Sec. 496.) This doctrine was affirmed by Judge Story in Hough v. Richardson, 3 Story, R. 689,) and I quote the language of the learned Judge as asserting a principle applicable to the facts of the present case. " The sale, then, being made by Moulton, not as himself the " owner—which he was not—but as the agent of the owners, "it follows that they are bound by his representations, made at " the time touching the sale, as a part of the *res gestae ;* and as " to the purchasers, it makes no difference whether these repre-"sentations were made by the authority of the owners or not, " if they were material to, and constituted the basis of, the sale, " and it was made by the purchaser on the faith and credit of " these representations. Under such circumstances, the sale is " good in the entirety, or not good at all. The owners have no " right to insist upon the validity of the sale independent of the " representations. The whole must be taken together as a part " of one and the same transaction. It cannot be adopted in "part and rejected in part. It must be taken as good for the " whole or not at all." (And see 1 Story R. 172 ; 3 Id. 729, 612.)

The Court therefore erred in charging the jury, that in order to set aside the contract, on the ground of the fraudulent representations of the agent, they must have been made with the knowledge and by authority of the Company. The representations of the agent, acting within the scope of his authority and employment, are treated as the representations of the principal himself; and are binding upon him, whether he knew of them or not. And, as we have just seen, though he exceeded his authority in making the contract, yet, as the Company, by accepting a conveyance from the trustee and taking the benefit of the contract, have ratified and adopted his acts, and made them their own, they are liable in like manner as if they had personally done the acts. They must take them all together, and with all their consequences.

Then, as to the proposition embraced in the charge, that, to avoid the contract, the false representations must have been made " with the intent to deceive and defraud the plaintiff," the Court was equally in error. " If a material misrepresent-" ation be made, although it be not embodied in the contract, " it is considered as a constructive, or legal fraud, although it " be made without any wilful intention to deceive, but merely " through carelessness, mistake or ignorance ; for if a party be " actually deceived by a misrepresentation, the practical result " is the same, whether it were a wilful fraud or not. If, there-" fore, a party undertake to make a material statement, not " knowing whether it is true or false, and thereby mislead ano-" ther to his injury, it is no difference that he did not know that " the statement was false ; since, before making the affirmation, " he should have ascertained its truth. But where this repre-" sentation is purely accidental and without fraudulent design, " it is not necessary to consider it to be a fraud, since if it be " made by mistake, it would avoid the contract if it should touch " its essence, on the ground of a want of mutual assent of the " parties. For if a gross misrepresentation be made as to a ma-" terial fact, it matters not whether it be treated as a construc-

" tive fraud, or as a mere mistake, the right of the party de-
" ceived to avoid it is the same." (Story on Con. Sect. 506,
and notes; Mitchell v. Zimmerman, 4 Tex. R. 75.) Judge
Story, in his treatise on Equity, states the doctrine more
strongly, thus: "Whether the party thus misrepresenting a
" material fact, knew it to be false, or made the assertion with-
" out knowing whether it was true or false, is wholly immate-
" rial : for the affirmation of what one does not know or believe
" to be true, is equally in morals and law as unjustifiable as the
" affirmation of what is known to be positively false. And
" even if a party innocently misrepresents a material fact by mis-
" take, it is equally conclusive, for it operates a surprise and
" imposition upon the other party." (1 Story's Eq. Juris. Sec.
193.)

The charge of the Court, therefore, was erroneous and cal-
culated to mislead.

At the instance of the defendent, the Court further instruct-
ed the jury, " That the time limited in the charter for begin-
" ning and completing the road, having been extended by the
" Legislature, the time limited in the original charter," &c.,
" was not of the essence of the contract, and the failure to
" complete the road or any part of it, within the time does not
" discharge the party from his contract."

The propriety of giving this instruction is, to say the least,
very questionable. In so far as it implies, that an extension
of time by the Legislature, could have the effect, as between
the Company and third persons, of releasing the former from
the obligation of their contracts, or could affect the rights of
the parties to the contract in question, we cannot assent to
the doctrine. If the construction of the road within some
certain time was the essential inducement to the making of
the contract; if that was the real intention of the contract,
and the obligation which it imposed on the defendants, the
extension of time by the Legislature could not have the effect
to discharge the defendants from that obligation. The terms

of the contract and the attendant circumstances must be looked to, to ascertain the real intention of the parties, and how far time was regarded by them as material. We must suppose it. was within their contemplation that the road would be constructed, if not literally within the time stipulated, at least within some reasonable time, regard being had to all the circumstances, and that that expectation was the essential inducement to the contract. It is not reasonable to suppose that the plaintiff would have made the contract, if he had not been led to believe that the road would be constructed, or at least in the process of being constructed, within the time specified, or some reasonable time thereafter. It certainly is not a reasonable supposition, that it entered into the intention or contemplation of the parties to the contract, that the time for its construction might be extended by legislative enactment from time to time, indefinitely. Nor can it be reasonably contended that the failure to commence and prosecute the work within a reasonable time, if not within the time specified, would not avoid the contract. That would be to hold a contract binding upon one party, when the obligation was not mutual. The charge of the Court was calculated to induce the belief that time was not material, when it appeared to have been the essential and sole inducement to the contract; or, at least, that it was not material, so long as the Legislature might see proper to extend the time for the making of the road, when such extension of time could have no other effect than, perhaps, to enable the defendants to perform their undertaking within such reasonable time as may be supposed to have been within the contemplation of the parties. It was going too far, to tell the jury that, because the Legislature had given an extension of time, " the failure to complete the road, " or any part it within the time, does not discharge the party. " from his contract." The instruction was calculated to mislead the jury, and was therefore erroneous.

But the right of the plaintiff to the redress he has sought is

denied ; and it is said that the charge of the Court was correct, for that the public have an interest in these enterprises, which rises above the individual rights of a single stockholder ; that the public interest forbids that one stockholder should thus discharge himself ; that it was not allowable for the Court to suppose a case within the law governing individual transactions, and instruct the jury as to the law applicable to the supposed case.

There is no principle known to the law which will enable a party, individual or corporate, to claim immunity for his wrongful acts, done to the injury of another's right, on the ground of public interest. On the contrary, the public as well as individual interests, demand the utmost fairness and probity in the transactions, as well of corporate bodies, as of individuals. Nor does the law recognize any such distinction, as that the ordinary rules governing the contracts of individuals do not equally apply to the case of incorporated companies. They are subject to the same liabilities and responsibilities for their acts and contracts as individuals. We know of no principle upon which they and their agents are to be deemed exempt in their dealings with others, from the ordinary obligations of morality and honesty.

Again, it is said, it can hardly be predicated that an agent of so extensive a public enterprise could deceive any body by his opinions as to its completion and cost ; that these are matters about which every one is presumed to be equally capable of judging. And the conclusion to be deduced, of course, is that the plaintiff was as capable as the defendants, or their agent, of judging of the truth of the representations ; consequently he ought not to have been deceived by them ; and, if so deceived, it was his own folly, for which he is remediless.

If the defendants, or their agent, had communicated truly and fully all the facts respecting the cost and character of the work, and their means of accomplishing their undertaking, and left him to judge for himself of the probability of its com-

pletion within the time stipulated, instead of making positive statements as to what they could and would do, the argument would be entitled to more weight. But it is certainly reasonable to suppose they best knew the extent of their own means and resources, and when they undertook to give positive assurances, upon their own responsibility, we know of no reason why third persons might not trust them; or, if deceived by them to their own injury, why redress should be denied. We cannot assent to the doctrine, that no one ought to be deceived by them, because no one ought to trust to their representations; nor are we prepared to hold them irresponsible on any such ground as that their opinions, professions and assurances ought not to be relied on by third persons with whom they contract.

Again, it is insisted that their representations cannot be deemed fraudulent, for that they had relation to things in the future. But it is not necessary, in order to render the representations and assurances of a party, on which others have acted, binding upon him, that they should have relation to facts which had previously transpired. The representations, as to what the defendants would do, when used as inducements to others, to contract with them, became assurances and undertakings, which they were bound to fulfill. They were obligatory upon them, and must be so held, or the contract would be void for the want of mutuality. If such assurances were not binding, there could be no binding promise to perform an act in future.

None of the considerations suggested in argument impair the claim and right of the plaintiff to the redress he seeks. They do not obviate the effect of the errors in the charge of the Court, or authorize us to consider them as immaterial. The charge was pertinent and material, and must have had a controling effect in its application to the facts of the case. It appeared in evidence, that, since the making of the contract, the land had appreciated more than fourfold in value. The time specified, for having the road completed, to the several points indi-

cated, (crossings of the Guadalupe and Cibolo,) had elapsed, and no part of it had been built; nor had there even been a beginning. There was an attempt to prove a beginning, and it was in evidence, that on the day before the charter would expire, when, as a witness stated, a demonstration had to be made to save the charter, some trifling amount of work had been commenced; there was some brush cut, and some grubbing, and perhaps a furrow or two ploughed, estimated to be worth ten dollars; and this, instead of being at the place of beginning, was near San Antonio. But if it had been at the right place, it was not of sufficient importance to be called a beginning of such an undertaking. The defendants are in the enjoyment of the plaintiff's property, without having verified any of the professions, by which they induced him to part with it; without having rendered any equivalent or consideration whatever. The plaintiff has derived none of the promised benefits to himself from the defendant's undertaking. The contract has operated as a gross imposition and fraud upon him. Such is the state of case which the record exhibits, and it would be difficult to conceive of a stronger case for the rescission of a contract. To hold that a man may be thus deceived, imposed upon and deprived of his property, by false hopes held out to him by another, and that he shall be wholly without redress for the injury done him, would be shocking to common sense and the sense of justice. In fine, to deny the plaintiff's right to redress upon the case which the record presents, would be, in effect, to maintain an exemption from legal responsibility, on the part of the defendants, which no body corporate, or politic, not even the State itself, can claim, in any country where private rights are respected, and law and justice administered. If the record truly presents the facts of the case, it cannot be denied, that the contract has operated a surprise, imposition, and manifest fraud on the plaintiff, which well entitle him to the redress he seeks; that is, to have the contract rescinded, and the property conveyed under it restored to him.

We are of opinion, therefore, that the judgment be reversed and the cause remanded for a new trial.

Reversed and remanded.