[Opinion approved April 17, 1883.]

THE CITY NATIONAL BANK v. J. M. CUPP & Co.

(Case No. 4748.)

1. ATTACHMENT BOND.— The individual stockholder in an incorporated company may be a surety on an attachment bond for the company; were it otherwise the objection could not be made available on a motion to quash.

2 LEVY, AND SHERIFF'S RETURN.— The sheriff's return on a writ of attachment, which recited that the writ was levied on land designated by the return which was "pointed out as the property of J. M. Cupp & Co. (the defendants in attachment) by Frank Ball," is sufficient, whether Ball was a party to the proceeding in attachment or not. The return was equivalent to a statement that the officer levied on the land as the property of the defendant.

3. CASE DISCUSSED.— Meuley v. Zeigler, 23 Tex., 88, discussed and distinguished.

4. ATTACHMENT — RETURN OF WRIT.— A writ of attachment levied, and return indorsed February 12, 1882, but not really filed in the proper clerk's office until January 2, 1883, after a term of the court had passed, was not on account of the delay vitiated as to the attaching creditor. The lien acquired by the levy was not lost, there being no intervening rights.

APPEAL from Tarrant.   Tried below before the Hon. A. J. Hood.

Suit brought by appellant against the firm of J. M. Cupp & Co., on two promissory notes executed by the said firm to appellant, and amounting in the aggregate to about the sum of $2,700.   An original attachment to Mitchell county came to the hands of the sheriff of that county on the 12th day of February, 1882, and was by him executed on the same day by levying on a stock of merchandise and also town lots Nos. 16 and 17, block 41, in the town of Colorado, Mitchell county, Texas, "pointed out as the property of J. M. Cupp & Co. by Frank Ball."   The writ of attachment, as appears from the clerk's indorsement, was filed in court January 2, 1883.

The defendants filed a general demurrer, a general denial, and also motions to quash the writ of attachment; the first motion, filed May 8, 1882, setting up certain supposed defects in the attachment bond as ground for quashing, which are indicated in the opinion, and the second motion, filed January 5, 1883, directed against the

Mitchell county attachment, and asking that the same be quashed because the writ was issued in February, 1882, and returnable to the May term, 1882, but was not returned to court until long after the return day thereof, to wit, "on the 2d day of January, 1883," and further asking that the writ be quashed because the defendant Caleb Cupp had died since the issuance and levy of the same, and his death had been duly suggested and proven.

The court rendered judgment for the plaintiff for the amount of the note sued on, with interest and costs, but refused to foreclose the attachment lien of plaintiff on the real estate levied on under the attachment to Mitchell county, because, as the court stated in its findings, if the plaintiff acquired any lien on the land by virtue of the levy, then that "the laches of the plaintiff in not having the writ returned to this court for the time shown, thereby the plaintiff waived its right to any lien on the property."

*Ball & McCart*, on sufficiency of return of levy, cited R. S., art. 177; Hill v. Cunningham, 25 Tex., 31; Stoddart v. McMahan, 35 Tex., 267–8; Sayles' New Treatise, p. 401; Drake on Attachment, 213–216, 237, 239; Lucas v. Godwin, 6 Ala., 831; Bannister v. Higginson, 15 Me., 73; Herman on Ex., p. 385, sec. 238.

On the lien of the attachment, they cited R. S., arts. 167, 176, 2291; Stoddart v. McMahan, 35 Tex., 267; Hancock v. Henderson et al., 45 Tex., 479; Vaughan v. Warnell, 28 Tex., 122; Underwood v. Russell, 4 Tex., 178; Sayles' New Treatise, p. 401; Drake on Attachment, secs. 122, 213, 204, note; Crocker on Sheriffs, p. 27; Herman on Executions, sec. 169, p. 377; sec. 233, pp. 398, 396 and authorities there cited; 12 Cal., 133; 4 Wend., 462; 6 Cal., 277; 3 Bush (Ky.), 127; 11 Cal., 239; 1 Hill (N. Y.), 205; 1 Wend. (N. Y.), 289; Reed v. Perkins, 14 Ala., 231; 13 Pick., 477; Bancroft v. Sinclair, 12 Rich. (S. C.), 617.

*Hogsett & Greene*, for appellee, on the levy, cited Meuley v. Zeigler, 23 Tex., 90–92; 3 Mon. (Ky.), 293; 3 Yerg., 362; 3 R. I., 86; 3 G. Greene (Iowa), 387; 10 Wall. (U. S.), 317; R. S., art. 176; Drake on Attachment, secs. 204, 210; 24 Pick., 8; 6 Cush., 242; 14 Gray, 141; 118 Mass., 74; 4 Dutcher, 201; 5 Dutcher, 426; Crocker on Sheriffs, sec. 40; 19 Ill., 440.

On the incompetency of the surety, they cited U. S. R. S., §§ 5146, 5150, 5151; 8 Wall., 505; Hawthorne v. Calef, 2 Wall., 22, 23; 1 Comst., 47–49; 24 Barb., 87; 7 Barb., 279; Pothier on Ob., vol. 1, star p. 383, top p. 314; Wait's Act. & Def., vol. 5,

p. 185; Add. on Con., vol. 4, p. 119, sec. 1111, definition of word "surety;" Brown L. D., and Webster; 47 Tex., 49, 90, 216; 4 Tex., 287.

WILLIE, CHIEF JUSTICE.— The fact that the attachment bond given by the appellant was signed as surety by a stockholder in the bank, if a defect at all, was not such as could be reached by a motion to quash the attachment. None but an intrinsic defect, or one which appears on the face of the bond, can be reached by a motion to quash; and an objection to an extrinsic defect, or one which must be sustained or rebutted by evidence *aliunde*, must be taken by plea. Wright *v.* Smith, 19 Tex., 297; Messner *v.* Hutchins, 17 Tex., 597; Hill *v.* Cunningham, 25 Tex., 25.

But admitting that the objection was taken in a proper manner, it was not tenable. The individual members of an incorporated company are entirely distinct from the artificial body endowed with corporate powers. Henderson *v.* R. R. Co., 17 Tex., 573. Such member is considered a stranger to the artificial body created by the act of incorporation. Id. He may sue it or be sued by it, and no reason can be perceived why he may not become surety for it. The fact that a member of a national banking association is liable ultimately for its debts to a certain extent does not alter the case. Stockholders of any corporation are liable for its debts to the amount of their unpaid subscriptions to stock, and by our statute they are liable to a still greater extent. By the national banking act their liability is somewhat enlarged, but the principle is not changed. They do not become partners, but are still only members of a corporation, with the same right to maintain actions against it, or to become surety for it, as in the case of any other artificial body.

Nor do we think there is anything in the objection raised to the return of the sheriff upon the attachment, viz., that it was levied upon a block of land pointed out as the property of J. M. Cupp & Co. by Frank Ball. The property was pointed out to the sheriff as belonging to the defendants, and by making a levy upon it, he approved the designation thus made as correct, and became responsible for the consequences of the levy. It made no difference whether or not Ball was a person who had authority to point out the property for levy. If the sheriff acted upon Ball's suggestion, he, in effect, adopted it, and the return was equivalent to a statement that he levied on the land as the property of the defendants.

There is no analogy between this case and that of Meuley *v.* Zeigler, 23 Tex., 88. In that case the return did not state where the prop-

erty levied on was situated.   Neither the town, county or state of its locality was given.   In this it is stated to be "in the town of Colorado, Mitchell county, Texas" — as clear a description as could be given.   In that return nothing is said as to its being the property of any one, or levied on as the property of any one, or pointed out as the property of any one.   In this it was pointed out as the property of the parties against whom the attachment was issued.   In that case the question was between the attaching creditor and a third party who had bought from the defendant; in this the controversy is with the defendant in attachment himself.   The court held the return bad, as against a purchaser without actual notice of all the proceedings.   He was not of course chargeable with implied notice of where the land so imperfectly described in the return was situated.   We can see no reason for any greater certainty than is found in the present return as between the plaintiff and defendant in attachment.

It is further urged by appellee that the writ of attachment issued to Mitchell county was properly dissolved because the writ, together with the sheriff's return, were filed in court at too late a day.   This writ of attachment was executed on the 12th of February, 1882, and the return indorsed on the writ as of that day; but the process itself, with the return indorsed, although returnable to the next May term of the court, was not filed in the clerk's office till the 2d of January, 1883.   There seems to be no proof besides the mere dates of these proceedings that the plaintiffs or their attorneys were guilty of any neglect in failing to file the writ in court at the proper time.

The lien was acquired by the levy of the attachment, and in order to preserve and enforce it by a judgment and execution, it was perhaps necessary that a return of the levy and seizure of the property should be made to the proper court.   This return would bring to the knowledge of the court the fact that the writ had been lawfully executed, and inform it as to what property had been seized under it.   A return showing these facts was indorsed on the writ, and everything was complete under the statute down to that time.   It may be admitted that, until the writ was lodged in court with the return indorsed upon it, no judgment could be entered up foreclosing the lien.   Yet this would result, not from the fact that the lien was lost for want of the presence of the process in court; but for want of evidence brought to the court's notice that it had been properly executed.   Had the court proceeded to foreclose the lien without proof made in this way, probably the judgment might have been erroneous.   But such was not the case.   No action of this sort

was taken until after the writ was filed, nor was any suggestion made to the court by appellee previous to that time as to the failure to lodge the writ in the clerk's office. At the time the judgment was rendered, every fact necessary for the court to know in order to foreclose the appellant's lien was apparent to it from the face of the proceedings themselves, and it should have given the plaintiff the benefit of these proceedings by foreclosing the lien.

We are referred to Massachusetts decisions wherein it is held that a return of the writ into court is necessary to preserve the lien. That may be true, and these decisions not clash with our views above expressed. In this case a return was made and filed in court, though later than the law required. Moreover, all those cases were suits brought against a sheriff for trespass in seizing property under the attachment, and the questions did not arise between the attaching creditor and debtor on motion to dissolve. The courts might well hold that a sheriff could not justify under process which he failed to return or returned too late, and yet hold the attachment not vitiated thereby as to the attaching creditor. For in the former case the sheriff would be prohibited from deriving any benefit from his own laches, whilst in the latter the creditor would not be allowed to suffer from the neglect of the officer. See Wilder v. Holden, 24 Pick., 8; Williams v. Babbitt, 14 Gray, 141; Paine v. Farr, 118 Mass., 74.

The courts of Alabama and California have held in accordance with our views in cases where the question has arisen between the attaching creditor and the defendant in attachment, and we think their opinion well supported by reason. Reed v. Perkins, 14 Ala., 231; Ritter v. Scannell, 11 Cal., 238.

In South Carolina the court has gone further, and held that the attachment lien was not lost in favor of the plaintiff for such a delay in returning the writ, although between the time of the levying and returning the writ other creditors had sued out attachments and had them levied on the same property, and the question was between the original plaintiffs in attachment and these subsequent creditors. Bancroft, Lemon & Co. v. Daniel Sinclair, 12 Rich. Law, 617.

It is not necessary for us to extend the rule so far in this case, as the rights of no third parties accrued between the levy and the return of the attachment.

We think, however, that under the facts as disclosed by the record, the judge below should have overruled the motion to quash the attachment and given judgment foreclosing the lien upon the property seized under the writ of attachment.

The judgment will be reversed and reformed so that it may adjudge a recovery of the amount sued for by the plaintiffs below and foreclose the lien upon the real estate attached in Mitchell county, and an execution for any balance due plaintiffs after the proceeds of the sale of said attached property shall have been exhausted.

REVERSED AND REFORMED.

[Opinion delivered April 20, 1883.]