CLARK & BOICE LUMBER CO. v. BARKER. (No. 1707.)

(Court of Civil Appeals of Texas. Texarkana. March 8, 1917.)

1. PRINCIPAL AND AGENT &#9884;63(1)—DUTY OF AGENT—LIABILITY FOR BREACH.

Plaintiff having after appointing defendant its agent to sell lands, on commission, with reservation of right in plaintiff to reject any sale, instructed defendant to report in each proposed sale whether there was timber on the land included therein, he, having undertaken to do this, was under a duty making him liable for all loss occasioned by his violation thereof.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. §§ 105, 110–112.]

2. PRINCIPAL AND AGENT &#9884;71 — AGENT'S DUTY TO PRINCIPAL—FRAUD—STATEMENTS RECKLESSLY MADE.

Positive and definite false statements, made by an agent in reporting to his principal a proposed sale of land, that there was no timber on the land, being made without going through the tract and without actual knowledge of what was the fact, will support an action for deceit.

[Ed. Note.—For other cases, see Principal and Agent, Cent. Dig. § 147.]

3. LIMITATION OF ACTIONS &#9884;100(8) — ACCRUAL OF CAUSE OF ACTION — AGENT'S FRAUD.

Limitations against action by principal against agent under a continuing agency for sale of land, for definite and positive false statement, recklessly made without knowledge in report of proposed sale, that there was no timber on the tract in question, begins to run only from acquisition of knowledge by principal of the misrepresentation, when the agency was terminated; the agent having been under duty to report on the fact.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. § 487.]

Appeal from District Court, Cass County; H. F. O'Neal, Judge.

Action by the Clark & Boice Lumber Company against J. W. Barker. Judgment for defendant, and plaintiff appeals. Reversed and remanded.

The action is by appellant against appellee for consequential damages for alleged deceit in making a misrepresentation of fact while effecting a contract of sale of land for appellant as its agent. The defendant demurred to the petition, and pleaded, besides denial, the bar of two-year statute of limitation and estoppel to claim damages. The case was tried before the court without a jury, and judgment was entered in favor of the defendant.

The appellant company is a private corpo-

ration, with its principal office at Dallas, Tex., and has a sawmill located at Jefferson, Tex. The appellant is the owner of a large quantity of lands in Cass county. The timber had been cut off of a large part of the land by appellant, and some of the tracts of land had growing timber on them. It was the purpose of appellant to make sale only of the lands from which the growing timber had been removed by it. F. I. Clark is the vice president of appellant company, with office at Dallas, and has authority to execute conveyances to land for the company. On September 8, 1911, the appellant company, through F. I. Clark, entered into a written agreement with appellee, reading as follows:

"Whereas Clark and Boice Lumber Company is the owner of a large amount of land in Cass county, Texas, and desiring to dispose of the same to the best advantage hereby appoints J. W. Barker its agent to sell said lands upon the terms and conditions as follows: 1. Said J. W. Barker is to use his best efforts to sell the land as fast as possible and at the best terms possible, and the Clark & Boice Lumber Company will execute deeds to whatever parties said Barker may designate promptly when advised of the field notes and terms of sale. The Clark & Boice Lumber Company, however, reserve the right to reject any sale which they may see fit."

Section 2 of the writing specifies the compensation of the appellee for services to be 10 per cent. of the purchase price of each tract of land of which sale is made, and section 3 provides that the contract shall continue in force until terminated by either party, which may be done by giving 30 days' notice in writing. It was explained to appellee, and he understood, that the company did not want to sell any timbered land without reserving the timber in the sale. It appears that for the purpose of logging the mill the company had a plat of its lands, made in 1910, showing the timbered land and the "cut over" land at the time. It appears that as the timber was cut off the land the plat was not changed and kept up to date. "This plat," as Mr. Clark testified, "was wholly unreliable." After the contract between appellee and appellant was executed, F. I. Clark directed the appellee to make report in each proposed sale of the land as to whether there was timber on the particular tract, and appellee consented to do so. "Our idea," Mr. Clark testified, "in requiring that report was to see whether we wanted to make the sale or not. Supposing that he (appellee) reported there was timber on the land, we might want to sell the land and reserve the timber, or might not want to sell it at all; it was up to me to decide whether I wanted to sell it or not, based on his (appellee's) report. We did not want to sell any land with timber on it; we never sold the timber with the land." Appellee under the contract made sales of land and reported in the various sales whether or not there was timber on the land, in order to enable the company, acting through F. I. Clark, to determine whether it would accept or reject the proposed sale of land.

On August 19, 1912, appellee contracted a sale of 55 acres of land to C. H. Doss, made a survey of it on the ground, and made and mailed the following report:

"Clark & Boice Lumber Company, Dallas, Texas.—Gentlemen: Find inclosed herewith field notes for 55 acres of the Bland survey for Mr. C. H. Doss. $10.00 per acre—one-fifth cash. No timber or ore in this tract. Very truly yours, J. W. Barker."

On this report the appellant company executed a deed to the land to C. H. Doss. As a fact it appears there was 300,000 or more feet of merchantable timber on the tract at the time of the report and the sale of the land, and which Mr. Doss afterwards cut off and sold for $1.75 per thousand feet at the stump. The appellee testified, in part, as follows:

"At the time I sold this tract of land to Doss there had never been any contract between me and the Clark & Boice Lumber Company about me reporting the land that had timber on it or iron ore; they had requested me to do that simply as a request; just asked me to do that. Yes; I surveyed this 55 acres of land. I cut the 55 acres out of a larger tract of 102 acres of land. I think Mr. Doss and my brother assisted me in making the survey. Mr. Doss says his two sons also assisted; I don't remember. Flat creek runs right through this land, and it is practically all in the bottom, and at that time none of the oak or anything had ever been taken away. It was a very dense forest, and when I went around it I saw no timber except an occasional old pine that I supposed was an old doty tree that had been left when they cut it over. They were some old scattering trees. I sent Clark & Boice Lumber Company the field notes that I had surveyed, and they sent me the deed, and Mr. Doss executed the notes. I didn't in any way try to conceal the fact that there was any timber on the land; I didn't know there was any question about any timber until the beginning of the summer or fall of 1915, when I got word from Mr. Clark. I didn't get any benefit out of it whatever. * * * On this particular tract I didn't notice any timber, and I reported it as I saw it, like I did all the balance of them. * * * I never intentionally concealed any timber on any land from the Clark & Boice Lumber Company. * * * I wrote Mr. Clark the letter; I wrote him there was no pine timber or ore on there. Mr. Clark had known me a long time, and I knew Mr. Clark depended on what I told him; and as I stood by my propositions usually, I thought that he would take my word for it. * * * I am sure if I had noticed any pine and I considered worth mentioning that I would have mentioned it. I would not have done anything that would injure the Clark & Boice Lumber Company knowingly. * * * I did not go over or through the 55 acres of land—only run the lines around it in surveying. The road is on the south line."

F. I. Clark testified, in part, as follows:

"The proposition for the sale of this Bland tract of land was submitted to the company at Dallas; and I, as an officer of the company, acted upon it. It was submitted in a letter accompanied by the field notes. (The letter of J. W. Barker is here read.) The letter had influence on me in determining whether to make the sale or not. The sale was made, based on the report. I did not know whether there was any timber on the land or not, only what this letter stated. I relied upon what he (Barker) said as being true. I would not have made the sale if I had known there was timber in merchantable quantities on the tract. Mr. Barker continued to act in the capacity of agent of the

Clark & Boice Lumber Company until some time last year (meaning 1915)."

Glass, Estes, King & Burford, of Texarkana, for appellant. Bartlett & Lincoln, of Linden, for appellee.

LEVY, J. (after stating the facts as above). [1, 2] The relation between the appellee and the appellant company was that of principal and agent in effecting the sale of the land. And it is conclusively shown by the evidence that the appellee was directed by his principal, acting through Mr. Clark, to make report in the sale of each tract of land concerning whether or not there was in fact timber on the said tract. The evident object and purpose, it appears, in having appellee to make observation on the ground and report as to whether or not the particular tract proposed to be sold had in fact timber on it was to inform Mr. Clark, who, acting for the company in the sales of land, was not certainly informed as to the real state of facts of whether the particular tract had or did not have timber on it. And it is conclusively established as a fact that the appellee undertook to perform this duty and give this information in the course of his agency. Having undertaken, as appellee did, to perform the instructions of his principal to make report as to whether or not there was timber in fact on the land proposed to be sold, the appellee would be responsible for all loss occasioned by any violation of his duty. And it is undisputed in the evidence that the appellee represented, while effecting a contract of sale of the 55 acres to Doss, that there was no timber in fact on the land, when in fact there was 300,000 or more feet of timber on the said tract. The representation was made in a positive and definite manner. And from the appellee's evidence it appears that he made the representation while on the ground, surveying the lines of the tract of land. It appears, though, from appellee's evidence that he did not go through the land to see if there were timber on it, and that his positive and definite statement of fact was without actual knowledge of the fact as it was on the ground. An action for deceit may be predicated upon false statements recklessly made by one who does not know that they are true in fact. Mitchell v. Zimmerman, 4 Tex. 75, 51 Am. Dec. 717; Henderson v. Railway Co., 17 Tex. 560, 67 Am. Dec. 675; 20 Cyc. p. 27; 12 R. C. L. p. 337, § 94; 2 Pomeroy, Eq. Jur. §§ 887, 888.

[3] It appears conclusively in the case that the appellant had no actual knowledge of the alleged misrepresentation until June, 1915; and it may not properly be said, we conclude, that appellant, in the circumstances of the present record, had constructive knowledge or was not diligent in sooner discovering that the particular tract had timber on it. The agency here was a continuing one until

June, 1915; and the very purpose of having appellee make the report of whether the particular tracts to be sold had in fact any timber on them was to inform the appellant's authorized agent, Clark, who had no certain information in respect thereto and was desiring through appellee to prosecute such inquiry of fact. This was ordinary diligence on the part of appellant to ascertain the real state of facts concerning the timber. And the appellee's report of the fact was made in a manner so definite and positive as naturally to induce the appellant not to use any other means of information during the continuing agency. It is therefore believed, in view of the facts of this case, that the statute of limitation may not be held to begin to run until June, 1915. We conclude, on the whole case, that the judgment is, as complained of by appellant, contrary to the evidence, and should be reversed and the cause remanded.

The allegations of the trial amendment are sufficient, as against the demurrer, and the cross-assignment of appellee is overruled.

The judgment is reversed, and the cause remanded.